Dennis DIAMOND, Plaintiff,

v.

Ronald W. ROSKENS, Administrator, Agency for International Development, Defendant.

Civ. A. No. 91–1510 (TPJ).

United States District Court, District of Columbia.

May 13, 1992.

Michael J. Kator, Richard A. Salzman, Kator, Scott & Heller, Washington, D.C., for plaintiff.

Sally M. Rider, Asst. U.S. Atty., Civil Div., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This is a Title VII employment discrimination case brought by plaintiff Dennis Diamond, a 41–year old GM–15 attorney, against his government employer, the Agency for International Development ("A.I.D."). Diamond is a white male who was passed over in February, 1989, for the position of A.I.D.'s Director of Equal Opportunity Programs ("EOP") in favor of a black female. He alleges that the defendant's predecessor as Administrator of A.I.D., the selecting official, made the decision on grounds of race and gender, precipitating, first, plaintiff's administrative EEO complaint in May, 1989, within the agency itself, and, over two years later without a decision, his complaint in U.S. District Court in June, 1991.

The case is now before the Court on plaintiff's motion for summary judgment following the close of discovery and pretrial conference, in advance of an imminent

trial on the merits. The motion is predicated upon a proposed, but unexecuted, administrative decision *in his favor* on his intra-agency EEO complaint, first formally disclosed to him, he says, in the course of pretrial discovery here. Upon the following undisputed facts, which reflect no credit on the government irrespective of the truth of Diamond's charge, the Court will grant the motion for summary judgment.

### I.

The record discloses that Diamond joined A.I.D. in April, 1982, and served continuously in the agency's Office of Equal Opportunity Programs until April, 1989, when he was reassigned to A.I.D.'s Office of General Counsel. In January, 1985, the then-Director of EOP was detailed to another agency, and Diamond was made Acting Director. When it appeared the incumbent Director would not be returning to A.I.D., in April, 1988, A.I.D. announced a vacancy in that position for which Diamond and others applied and were found qualified. In February, 1989, the black female was selected as Director, EOP, and in due course Diamond filed his administrative EEO complaint. On June 6, 1989, the new Director, EOP, recognizing the direct conflict of interest Diamond's complaint presented for her, delegated the processing of it to the Department of State's Office of Equal Opportunity and Civil Rights, pursuant to the applicable regulations,[1] transferring to the delegee "the authority to perform all functions ... through the issuance of a Final Agency Decision." (Pl. Exh. 11).

A Deputy Assistant Secretary of State for Equal Employment Opportunity and Civil Rights accepted the delegation on behalf of the Department of State without condition or reservation on June 8th. (Pl. Exh. 12). He then assigned the case to a

---

1. 29 C.F.R. § 1613.216(a) provides, in pertinent part, that an agency's Director of Equal Employment Opportunity "shall provide for the prompt investigation of the complaint." It continues to state that "[t]he person assigned to investigate the complaint shall not occupy a position in the agency that is directly or indirectly under the jurisdiction of the head of that part of the agency in which the complaint arose."

29 C.F.R. § 1613.221(a) requires the head of the agency or a designee to make the decision of the agency on a complaint, based upon a preponderance of evidence. If the head of the agency designates another to make the decision, the designee need only be a person "who is fair, impartial, and objective."

private contract investigator who, by October 24, 1989, had completed her inquiry and submitted a "Proposed Disposition" to the Deputy Assistant Secretary of State, supported by a 21–page report of her investigative findings. The Proposed Disposition purported to find that Diamond had *not* been selected for the position of A.I.D.'s Director, EOP, "because of his race (white) and sex (male)." It also purported to order "such remedial action as will make the Complainant whole." The Proposed Disposition required only the signature of the Deputy Assistant Secretary to become official, but the signature was never affixed, nor, it seems, were A.I.D. and Diamond officially notified of the Proposed Decision. (Def. Exh. 9).

More than seven months later, prompted by an A.I.D. query in early July, 1990, a new Deputy Assistant Secretary transmitted the Proposed Disposition to the current A.I.D. Administrator (the defendant Roskens) by an undated letter, in which she stated:

> You as agency head and final decision maker can reject [the] proposed disposition and issue a different decision. However, it is my opinion that the evidence collected during this investigation does not support a disposition other than the one that is presented.

She continued with a recommendation that A.I.D. negotiate with Diamond for an "informal" settlement agreement which, she said, "should show no-fault and fall within established personnel and legal parameters." Legal counsel, she advised, should assist "in the development of such agreement." (Pl. Exh. 18).

On November 9, 1990, an "Acting" A.I.D. Administrator returned what he termed the "draft" of the Proposed Disposition to the Deputy Assistant Secretary of State for "handling" by her, reminding her that A.I.D. had delegated, and the State Department had accepted, authority to process Diamond's complaint through the issuance of a Final Agency Decision. "While the decision is totally yours," the

Acting Administrator's letter said, "you may want to review [the analysis and conclusion of discrimination].... *Fortunately, there is an opportunity to make any improvements you might wish to before issuing it under [sic] your signature.*" (Pl. Exh. 19; emphasis supplied).

On November 26, 1990, the Deputy Assistant Secretary replied to the Administrator refusing to issue the disposition "under" her signature. The delegation of authority might not have been valid, she demurred, and her decision might not be enforceable or binding on either party. She reiterated her recommendation for negotiations looking towards settlement with Diamond to "resolve this matter without further processing." Otherwise, she proposed, they should send the "entire package" to the Equal Employment Opportunity Commission, "[g]iven the sensitivity of the case...." (Pl. Exh. 20).

No settlement was reached with Diamond. Neither the Administrator of A.I.D. nor the Deputy Assistant Secretary of State has ever officially rejected the Proposed Disposition (nor, of course, has either publicly adopted it). The investigation has not been reopened. And the case has never been referred to the Equal Employment Opportunity Commission.

## II.

As embarrassed as A.I.D. may have been to confront an allegation of discrimination in its own Office of Equal Opportunity Programs, and as relieved as it probably was to be presented with an excuse to avoid resolving it, A.I.D.'s Director, EOP, was nevertheless plainly correct when she perceived the conflict of interest to require delegation of authority to decide it. The delegation was made pursuant to an appropriate regulation, and it was unconditionally accepted by the Department of State as delegee.[2]

The investigation of Diamond's complaint conducted by the Department of State's contract investigator was, so far as is

---

**2.** Defendant has admitted the validity of the delegation. Defendant's Pretrial Statement, p.

**5.** Plaintiff's Statement of Undisputed Material Facts, No. 49, and Defendant's response thereto.

shown by her report, not only fair, impartial, and objective, but also reasonably thorough, although its conclusion might be debatable. It is also corroborated by documentary evidence.[3] And, perhaps most significantly, it has never been formally repudiated or reopened by the Department of State, or by A.I.D. (unless it can be said that A.I.D.'s defense of this action should be deemed a belated implied repudiation). Indeed, the responsible Deputy Secretary of State, having both the authority and the duty to reject it if she found it deficient in any respect (disregarding the invitation she was given to "improve" it), not only failed to do so but pointedly urged it upon A.I.D. as the reason to negotiate a peace with Diamond, even after A.I.D. had questioned the validity of the conclusion it reached. She simply declined to put her signature on it.[4]

A.I.D. says it is now prepared for trial, at which it expects to show that plaintiff was not rejected as Director, EOP, for reasons of his race and sex. He was, in fact, ranked the least qualified of the five finalist candidates for the position and would not have been selected whatever had been the demographics of the situation.

▮ This Court will, however, join the others having held, in such cases, that a government agency is bound by the results of an administrative determination favorable to its employee upon a complaint of employment discrimination, and is not entitled to a *de novo* trial and judgment in federal court. *See Moore v. Devine,* 780 F.2d 1559 (11th Cir.1986); *Pecker v. Heckler,* 801 F.2d 709 (4th Cir.1986); *Haskins v. Dept. of the Army,* 808 F.2d 1192, *cert. denied,* 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987); *Rochon v. Attorney General,* 710 F.Supp. 377 (D.D.C.1989);

*Evans v. Secretary of Energy,* 52 F.E.P. Cases 347, 1990 WL 51921 (D.D.C.1990). A.I.D.'s delegee has found plaintiff to have been a victim of unlawful discrimination on the basis of race and sex, and that determination is sufficient to support a judgment for him here.

Accordingly, it is, this 13th day of May, 1992,

ORDERED, that plaintiff's motion for summary judgment is granted, and judgment on the issue of liability is entered for plaintiff; and it is

FURTHER ORDERED, that, at the status conference previously scheduled herein for July 13, 1992 for the purpose of setting a trial date, the parties shall present argument on the appropriate remedy to make plaintiff whole.

---

**3.** The investigation developed, *inter alia,* that the Administrator of A.I.D., in response to criticism from an unofficial minority advocacy organization calling itself the "Thursday Luncheon Group" and professing connections to an influential Member of Congress, (*see* Pl. Exh. 7) had reassured them of his "commitment to equal opportunity" for women and minorities at A.I.D., which he expected to be "demonstrated through action" in the selection of the "most qualified person" for Director, EOP. Letter of Alan Woods, Administrator, to Viessa Jackson, Vice President of the "Thursday Luncheon Group," May 18, 1988. (Pl. Exh. 8).

**4.** Equity, however, regards as done that which ought to have been done. *See generally,* George L. Clark, Principles of Equity § 20 (1919); 1 Melville M. Bigelow, Joseph Story's Commentaries on Equity Jurisprudence 68–69 (13th ed. 1886); 2 J.N. Pomeroy, Equity Jurisprudence § 364, at 10 (5th ed. 1941).