Dennis DIAMOND, Appellee/Cross–
Appellant,

v.

Brian ATWOOD, Administrator, Agency
for International Development,
Appellant/Cross–Appellee.

Nos. 93–5235 and 93–5246.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1994.

Decided Jan. 20, 1995.

Sally M. Rider, Asst. U.S. Atty., Washington, DC, argued the cause for the appellant/cross-appellee. On brief were Eric H. Holder, Jr., U.S. Atty., and R. Craig Lawrence and John D. Bates, Asst. U.S. Attys., Washington, DC, John R. Johnson, Asst. U.S. Atty., Washington, DC, entered an appearance.

Michael J. Kator, Washington, DC, argued the cause for the appellee/cross-appellant. On brief was Richard A. Salzman, Washington, DC.

Before BUCKLEY, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

J. Brian Atwood, the Administrator of the Agency for International Development (AID), appeals the grant of summary judgment against him and his agency based on an employment discrimination claim brought by Dennis Diamond (Diamond) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* The district court held that AID was bound as a matter of law by its delegee's finding of unlawful employment discrimination. We disagree. The delegee's proposed disposition of Diamond's complaint does not bind AID because it was neither adopted by AID nor finally decided by the delegee. Accordingly, we reverse the district court and remand the case for trial.

I.

The relevant facts are undisputed. AID hired Diamond in its Office of Equal Opportunity Programs (EOP) in April 1982. He became Acting Director of EOP in January 1985 when the incumbent was transferred to another agency. In April 1988, the agency declared a vacancy in the position. Diamond and other qualified candidates applied. Jes-

salyn Pendarvis, a black female, was selected in February 1989 as EOP Director. Diamond, a white male, was reassigned to the AID Office of General Counsel as an attorney advisor. Believing that the EOP Director selection decision involved race and sex discrimination, Diamond timely sought informal counseling regarding his grievance. In May 1989, he filed a formal complaint of discrimination against the EOP office which is charged with investigating and resolving discrimination complaints against the agency. AID regulations directed that such complaints be referred to the AID Office of General Counsel or to another federal agency. AID Handbook 24 at 5A–3 (effective Nov. 28, 1983) (attached as tab 10 to Statement of Material Facts filed March 25, 1992). Because of the conflicts of interest caused by Pendarvis heading the EOP office and Diamond serving as an attorney advisor in the Office of General Counsel, AID delegated to the Department of State (State) the authority to investigate and take final agency action on Diamond's complaint. In a letter dated June 6, 1989, and addressed to Clarence Hodges, Deputy Assistant Secretary for Equal Employment Opportunity and Civil Rights at State, AID proposed to "transfer to [State] the authority to perform all functions of the complaint processing ... beginning with the acceptance/rejection determination through the issuance of a Final Agency Decision." Joint Appendix (JA) 72. Two days later, State accepted the delegation.

State hired a private investigator to inquire into Diamond's allegations and to draft a proposed resolution of his complaint. In October 1989, the investigator completed her inquiry and submitted her findings and proposed disposition to State. The investigator's proposal concluded that Diamond "was not selected for the position ... because of his race (white) and sex (male), after serving as Acting Director with an outstanding record for four years." JA 20. On July 6, 1990, Ronald Roskens, the AID Administrator, requested in writing that Hodges's successor, Audrey Morton, "complete [her] analysis and render a judgment and final decision in this case." JA 77.

Morton forwarded the proposed disposition on October 24, 1990 to the AID Administrator and explained his options. JA 20–21.[1] On November 9, 1990, Acting AID Administrator Mark Edelman returned the proposed disposition to Morton "for handling," noting that the reason for the delegation "remains as valid today as it was last year." JA 22. Edelman also highlighted defects in the proposed disposition which he requested Morton to correct "before issuing it under [her] signature." *Id.* On November 26, 1990, Morton returned the proposed disposition to the AID Administrator. She explained that she did not intend to sign it because AID's delegation to State was "legally defective" and therefore any "issuance of a decision under [her] signature would not ... be enforceable nor [sic] binding on either party." JA 24.[2]

---

1. Morton's letter stated in relevant part:
   The proposed disposition that is enclosed with this letter must be signed by the head of the agency or that person designated by the agency head. Given the nature of this complaint and the reporting level of the position in question, I would recommend that you as Administrator sign the proposed disposition.... You as agency head and final decision maker can reject this proposed disposition and issue a different decision. However, it is my opinion that the evidence collected during this investigation does not support a disposition other than the one that is presented. My recommendation to the agency is to continue negotiations to reach an informal agreement with Mr. Diamond prior to the issuance of the proposed disposition.... The submission of the proposed disposition concludes the involvement of the Department of State in this matter.
   JA 20–21.

2. Morton's second letter stated in relevant part:
   While I have attempted to adhere to the terms of that agreement [by which AID delegated to State the authority to resolve Diamond's complaint] I cannot and will not issue under my signature a proposed disposition that must serve as the legal and binding decision of the A.I.D. Administrator. This decision is not taken lightly or without bases in regulation.
   JA 24. Morton explained her opinion that the delegation was legally defective, stating that it was not signed by the agency head. Morton concluded that "the most expedient thing would be to attempt an agreement with Mr. Diamond.... If this is not possible, then my recommendation would be to send the entire package to the Equal Employment Opportunity Commission for review and issuance of a proposed disposition and ultimately a final agency decision." *Id.*

Subsequent negotiations between AID and Diamond were unsuccessful. Diamond then filed suit in district court under Title VII, alleging race and sex discrimination.

The district court granted summary judgment to Diamond, holding that "a government agency is bound by the results of an administrative determination favorable to its employee upon a complaint of employment discrimination, and is not entitled to a *de novo* trial and judgment in federal court." *Diamond v. Roskens,* 790 F.Supp. 350, 353 (D.D.C.1992). It concluded that summary judgment was appropriate because AID's delegee had found that Diamond was a victim of employment discrimination. *Id.*

## II.

■ We review the district court's summary judgment order *de novo. School Dist. of Hatboro-Horsham v. Alexander,* 981 F.2d 1265, 1267 (D.C.Cir.1992). "Summary judgment is appropriate only where there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Beckett v. Air Line Pilots Ass'n,* 995 F.2d 280, 284 (D.C.Cir.1993) (citation and internal quotation marks omitted). Here the facts are not in dispute; they do not, however, support the conclusion that either AID or State adopted the proposed disposition.

We must first clarify what is not at issue in this appeal. We do not consider whether AID discriminated against Diamond. Nor do we reach whether the agencies' reasons for not acting on the proposed disposition were correct or justified. The sole issue is whether either AID or State effectively adopted as a final agency decision the finding of employment discrimination contained in the proposed disposition.

Diamond concedes that the proposed disposition was not formally adopted as a final agency decision.[3] He argues instead that the undisputed facts manifest the "equivalent" of a final agency decision because Morton's proposal represents her final decision and thus the final decision of the individual to whom final decisionmaking authority had properly, and repeatedly, been delegated.

But Morton did *not* adopt the proposed disposition. She simply recommended it to AID, noting that her proposal "must be signed by the head of the agency or that person designated by the agency head" and that the AID Administrator "as agency head and final decision maker can reject this proposed disposition and issue a different decision." JA 20. Because she believed that "issuance of a decision under [her] signature would not, in [her] opinion, be enforceable nor [sic] binding on either party," she *proposed* certain *action by AID.* JA 24–25. She recommended that *AID* adopt the proposed disposition, continue settlement negotiations with Diamond or refer the matter to the Equal Employment Opportunity Commission (EEOC) "for review and issuance of a proposed disposition and ultimately a final agency decision." JA 24. She expressly noted that neither she nor State had made a decision regarding the proposed disposition.[4] AID was to resolve the Diamond complaint as it chose for "submission of the proposed disposition concludes the involvement of the Department of State in this matter." JA 21.

It is immaterial whether Morton was correct in believing that she lacked the authority to make a final decision. Likewise, it is of no consequence whether she *should* have adopted the proposed disposition. The critical point is that she did not attempt to exercise such authority.

AID also expressly refused to act on the proposed disposition. In July 1990, AID Ad-

---

**3.** Section 281 of the Equal Employment Opportunity in the Federal Government regulations provides: "[T]he decision of an agency shall be final only when the agency makes a determination on all of the issues in the complaint, including whether or not to award attorney's fees or costs." 29 C.F.R. § 1613.281.

**4.** In his reply brief, Atwood asserts that Morton did not take at least two steps routinely followed by her office in processing a proposed disposition. First, she did not submit the proposed disposition to an AID personnel official for review. In addition, Morton did not submit the proposed disposition to a legal advisor in State's Office of Equal Employment Opportunity and Civil Rights for review.

ministrator Roskens had requested that Morton "complete [her] analysis and render a judgment and final decision in this case." JA 77. In November 1990, after Morton referred the proposed disposition to AID, Acting AID Administrator Mark Edelman responded that AID, without reservation, had delegated to State its full authority to process and resolve Diamond's complaint. He explained to Morton that "[t]he reason for the transfer—the real or apparent conflict of interest—remains as valid today as it was last year. Accordingly, I am returning the draft Proposed Disposition to you for handling." JA 22. In short, neither AID nor Morton acting for AID took action to adopt, ratify or implement the proposed disposition.

The authority relied on by the district court is distinguishable. The holdings in *Haskins v. Department of the Army,* 808 F.2d 1192, 1199 (6th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987); *Pecker v. Heckler,* 801 F.2d 709, 711 n. 3 (4th Cir.1986); *Moore v. Devine,* 780 F.2d 1559, 1562–63 (11th Cir.1986), and *Rochon v. Attorney General,* 710 F.Supp. 377, 378–79 (D.D.C.1989), that an agency is bound by an EEOC finding of employment discrimination, are of no consequence because those cases dealt only with the enforcement of EEOC decisions that had become the final actions of the agency whose conduct was being reviewed. In *Haskins,* 808 F.2d at 1194, 1199, *Pecker,* 801 F.2d at 711 n. 3, and *Rochon,* 710 F.Supp. at 378–79, the agency had expressly adopted the proposed discrimination finding of the EEOC. In *Moore,* 780 F.2d at 1562–63, the court relied upon an EEOC regulation providing that the hearing officer's recommended disposition would automatically convert to final action of the agency charged with wrongdoing if the latter agency did not object to or modify the proposed disposition within 30 days. No such provision operates, however, to convert the proposed disposition of a third-party agency (such as the State Department) to a final action of the agency charged. Moreover, in *Evans v. Secretary of Energy,* 52 Fair Empl.Prac.Cas. (BNA) 347, 1990 WL 51921 (D.D.C.1990), the agency offered the proposed disposition to the complainant as final agency action. In this case, neither agency offered Diamond any proposal to resolve his complaint.

The rationale underlying the preceding precedent does not apply here. As the court explained in *Moore,* the relitigation of findings contained in a final agency decision or EEOC order

> would require an employee who has successfully invoked an administrative scheme designed to bind agencies to remedy discrimination to prove his or her entire case again in federal court when the agency refuses to take the ordered corrective action. This result would undercut the utility of administrative dispute resolution....

780 F.2d at 1563. Diamond has not "successfully invoked an administrative scheme" because neither AID nor State finally resolved his grievance at the administrative stage. AID is not "refus[ing] to take the ordered corrective action" because AID did not agree to take any action nor was it so ordered by its delegee.

Notwithstanding the district court's implication to the contrary, AID's and State's inaction on Diamond's complaint did not effect a constructive adoption of the findings contained in Morton's proposed disposition. The regulations then in effect authorized Diamond to file a civil action if AID or its delegee did not resolve his grievance within 180 days of the filing of his administrative complaint with AID. 29 C.F.R. § 1613.281(b).[5] Diamond could thus abandon the administrative process and seek judicial review once he was denied final agency action by inaction. The agencies' inaction had no legal effect beyond triggering Diamond's right to judicial review.

Because we conclude that neither AID nor State, AID's delegee, adopted the proposed disposition as a final agency decision, AID is not bound by the findings contained in the proposed disposition. Diamond was not entitled to judgment as a matter of law on his employment discrimination allegations. Our holding makes it unnecessary to resolve the issue raised on cross-appeal regarding the remedy awarded by the district court.

---

5. Diamond acknowledged this provision in his complaint. JA 9.

For the preceding reasons, we reverse the district court's order of summary judgment and remand the case for trial.

*So ordered.*