DISTRICT OF COLUMBIA FINANCIAL RESPONSIBILITY AND MANAGEMENT AUTHORITY, and P & G, L.L.C., and Summit Properties Partnership, Plaintiffs,

v.

CONCERNED SENIOR CITIZENS OF THE ROOSEVELT TENANT ASSOC., INC., Defendant.

No. CIV. A. 00–1416 RCL.

United States District Court, District of Columbia.

Dec. 19, 2000.

Richard Alan Gross, Rosenman & Colin, L.L.P., Vincent Mark Policy, Greenstein, Delorme & Luchs, P.C., Washington, DC, for Plaintiffs.

Ronald Charles Jessamy, Sr., Jordan Keys Jessamy & Botts, L.L.P., Washington, DC, for Defendant.

## *MEMORANDUM AND ORDER*

LAMBERTH, District Judge.

Now before the Court is a dispute over the sale of the Roosevelt apartment building, located at 2101 16th Street, N.W. in

the District of Columbia. As there is essential agreement on the factual issues, the parties have each moved for summary judgment. After a full consideration of the parties' arguments, and for the following reasons, the Court GRANTS the plaintiffs' motion for summary judgment and DENIES that defendant's motion for summary judgment.

## BACKGROUND

The Roosevelt apartment building is currently owned by the District of Columbia Financial Responsibility and Management Assistance Authority (commonly referred to as the "Control Board"). The Control Board obtained title to the property in July 1999, when the District of Columbia transferred its ownership via a quitclaim deed in exchange for $3.1 million.[1]

On May 19, 2000, the Control Board contracted with P & G, L.L.C. (a co-plaintiff in this case) to sell the building for $10.1 million. The contract provided that the Roosevelt Tenant Association (the "Association") would first be given the option of purchasing the building under identical terms. If the Association was unable to match the terms, or declined to do so, P & G would have the right to purchase the building.

On May 22, 2000, the Association received the terms under which they could purchase the building. Just over two weeks later, on June 6, 2000, the Association informed the Control Board that it could pledge, as of that day, "$503,750.00 in loan commitments of immediately available funds." Plaintiff's Brief at 5. Needless to say, the Control Board did not consider this to be an offer on "identical terms."

The Control Board then sought to consummate the sale to P & G. At the same time, the Association asserted that the Control Board was violating the D.C. Housing Act by not permitting it a greater opportunity to purchase the building.[2] As the Control Board proceeded to settlement, it became clear that the Association's claim was preventing P & G from obtaining title insurance necessary for settlement.

Finding its sale to P & G stalled, the Control Board filed suit in this Court. The Control Board asserts that it has complied with all laws and regulations applicable to it, and asks the Court to declare that the D.C. Housing Act presents no legal impediment to the conveyance of the Roosevelt apartment building. The Association disagrees, and argues in its motion for summary judgment that the D.C. Housing Act justifies its position.

The Court will now consider this dispute.

## ANALYSIS

As a preliminary note, the Court notes jurisdiction under D.C.Code § ˙47–391.5(a) because the instant matter arises, "in whole or part," out of the D.C. Housing Act.

### I. Standard of Review

Both sides in this case move for summary judgment. Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any

---

1. The impetus for the transfer was the District of Columbia's emergency need for funds in order to rescue the financially failing Greater Southeast Regional Hospital.

2. The parties do not explain with specificity how the application of the D.C. Housing Act would expand the defendant's opportunity to purchase the building. As a general matter, the Act provides tenants with various rights during the sale of an apartment building. One of these rights is the first right of refusal, which presumably would assist the defendant in its effort to purchase the building. *See* D.C.Code 45–1631 *et seq.*

material fact and that (2) the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). There is no dispute of any material fact in this case. Thus, the Court must now determine which party is entitled to judgment as a matter of law.

## II. The Applicability of the D.C. Housing Act to the Control Board

■ An examination of the statute creating the Control Board reveals that the Control Board is not subject to the D.C. Housing Act.

The Control Board was created by an act of Congress entitled the District of Columbia Fiscal Responsibility and Management Assistance Act of 1995, D.C.Code § 47–391.8(a) ("FRMAA"). Section 108(a) of the FRMAA identifies the District of Columbia laws which apply to the Control Board:

> The following laws of the District of Columbia (as in effect on April 17, 1995) shall apply to the members and activities of the [Control Board]:
>
> 1) § 1–1504 [the local open meetings law];
>
> 2) §§ 1–1521 through 1–1526 [the local FOIA]; and
>
> 3) § 1–1461 [the local ethics act].

D.C.Code § 47–391.8(a).

■ Employing standard methods of statutory interpretation, the Court finds that the D.C. Housing Act does not apply to the Control Board. One of the most firmly established canons of interpretation is *expressio unius est exclusio alterios,* that is, the expression of one is the exclusion of the other. As far back as 1803, Chief Justice Marshall recognized that "[a]ffirmative words are often, in their operation, negative of other objects than those affirmed." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). *See also Gomez v. United States,* 490 U.S.

858, 871–72, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (recognizing that "legislative affirmative description' implies denial of the non-described powers") *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 188, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978); *National Railroad Passenger Corp. v. National Assoc. of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). Thus, in the case at hand, the affirmative statement that certain laws "shall apply" to the Control Board necessarily implies that laws not referenced shall *not* apply.

■ Of course, a canon of interpretation should not be invoked if it would cause absurd results or be contrary to the clear intent of Congress. *See, e.g., Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 454, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (recognizing that courts can look beyond statutory language when the plain meaning would "compel an odd result"). But the result here, which is to create an efficient administrative body unfettered by certain regulatory dictates, is neither absurd nor contrary to any clear intent that might exist. Indeed, if this Court were to be so bold as to divine a congressional intent in this case, it would be that Congress did *not* intend the Control Board to be subject to the Housing Act. *See McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 496, 111 S.Ct. 888, 112 L.Ed.2d 1005 ("It is presumable that Congress legislates with knowledge of our basic rules of statutory construction.").

The Court's interpretation of the Act is also supported by precedent. In 1997, Judge Robertson of this Court considered whether the D.C. Human Rights Act applied to the Control Board. *See Brewer v. D.C. Financial Responsibility and Management,* 953 F.Supp. 406 (D.D.C.1997). As Judge Robertson laconicly put it, "only three provisions of D.C. law have been made applicable to the Financial Control Board by Section 108(a)(3) . . . and the D.C. Human Rights Act is not one of them." *Id.* at 408. The defendant has failed to cite any case to the contrary.

With the proper interpretation of the Act established, the Court will now consider various alternative arguments offered by the defendant.

### III. The Defendant's Alternate Arguments

In addition to its interpretation argument, the defendant makes four arguments: (1) the transfer of the property from the District of Columbia to the Control Board violated the D.C. Housing Act, (2) the District of Columbia is estopped from arguing that the Housing Act does not apply to it, (3) the Control Board improperly received the property because it was not by "gift, bequest, or devise," and (4) the Control Board is only authorized to dispose of school facilities.

### A. The Unlawful Transfer Argument

■ The defendant argues that the Control Board's ownership of the Roosevelt building was effectuated in violation of the D.C. Housing Act. More specifically, the defendant argues that D.C. Government violated the Housing Act by not offering the building to the defendant prior to selling it to the Control Board. The defendant's argument is unpersuasive.

To begin with, the Housing Act applies to "owner[s]" of tenant buildings. *See* D.C.Code § 45–1637. According to section 45–1603, entitled "Definitions," an "owner" is "an individual, corporation, association, joint venture, business entity and its representative agents who hold title to the housing accommodation unit or cooperative share." D.C.Code 45–1603(14). Conspicuously absent from this list is any mention of the D.C. Government or its attendant subunits. Relying on the *expressio unius* canon invoked above, it is thus a fair presumption that the Housing Act does not apply to the D.C. Government.

Of course, it might be argued that the D.C. Government is covered by the Housing Act because the Government often acts as a "corporation" or "business entity." But this would be an unreasonable interpretation. The mere fact that the D.C. Government, in its multifaceted role as manager of the District, acts as a business entity in some respects does not alter the fact that the District is, at its heart, a government. It is quite illogical to think that the D.C. Government intended itself to be covered under the Housing Act by obliquely referring to itself as a "corporation" or "business entity."

■ Buttressing this interpretation of section 45–1603(14) is the long-standing presumption that statutes enacted by a legislature do not apply to the legislature itself.[3] The United States Supreme Court enunciated this principle in *United States v. Wittek*, 337 U.S. 346, 69 S.Ct. 1108, 93 L.Ed. 1406 (1949), a case strikingly similar to the instant case. At issue in *Wittek* was whether an emergency rent control law passed by Congress for the District of Columbia applied to the federal government in its capacity as landlord. The Court concluded that the law did not bind the federal government, stating that "[a] general statute imposing restrictions does not impose them upon the Government itself without a clear expression or implication to that effect." *Id.* at 358–59, 69 S.Ct. 1108 (citing numerous cases for support). *See also Hancock v. Train*, 426 U.S. 167, 179, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) (noting that the rule is an "old and well-known rule"). In this case, there is no "clear expression or implication" in the Housing Act that suggests that it was to cover the D.C. Government. Thus, the

---

**3.** The Court notes that this principle *may* not apply with full force in the District of Columbia, where statutes are passed by both the D.C. Council and Congress. In any event, the statute in this case, the D.C. Housing Act, was passed by the D.C. Council and signed into law by the Mayor. *See* D.C.Code Annotated § 45–1601 *et seq.* (noting legislative history). Thus, at least in this instance, the presumption that a statute does not bind the body that passed it would apply to this case.

District's transfer to the Control Board was not unlawful.

## B. The Estoppel Argument

█ The defendant argues that the District is estopped from arguing that the Housing Act does not apply to it, because the District admitted as much in a 1997 letter to the defendant. In 1997, the District, which then owned the building, offered to sell the building to the defendant. In the offer letter, the District stated that "if [the District has] not sold this accommodation within three hundred sixty (360) days from the date of this Offer of Sale, and [the District still desires] to sell the accommodation at that time [the District] must comply anew with the provisions of the [D.C. Housing] Act." Brief for Defendant at 15.

This is quite a peculiar argument. The District, of course, is not a party to this case. Thus, it can hardly be said that the District should be "estopped" from arguing anything. What the defendant seems to be arguing-if the Court may take the liberty to so infer-is that the Housing Act applies to the District because the District's 1997 letter amounted to some sort of official interpretation of the Housing Act, an interpretation that the Act applies to it. This argument, which is without a citation to a case or statute, is much too attenuated to succeed.

First of all, there is no body of law which holds that the D.C. Government must adhere *ad infinitum* to a so-called interpretation of a D.C. statute. While the field of federal administrative law does have a well-developed body of law in this area, there is no applicable analog in this case. Further, it is far from clear that the 1997 letter amounts to some sort of "official interpretation." The letter did not purport to be anything more than an offer of sale, and it is nonsensical to elevate a single statement from 1997—one made in a contractual setting no less—to that of law. The defendant's argument in this respect

borders on the fanciful and must be denied.

## C. The "Gift, Bequest, or Devise" Argument

█ The defendant argues that the Control Board may not sell the property to the plaintiff because it obtained the property in an unlawful way, that is, not as a "gift, bequest, or devise." FRMAA § 103(d). In making this argument the defendant is referring to Section 103(d) of FRMAA which empowers the Control Board to "accept, use, and dispose of gifts, bequests, or devises of services or property, both real and personal . . ." *Id.*

The defendant seems to be making a rough hewn version of the *expressio unius* argument explained above. The argument would seem to go that, since the D.C.Code explicitly provides for the Control Board's acquisition of property in certain ways, it meant to disallow the acquisition of property in ways not mentioned, in this case through purchase.

While the *expressio unius* principle is, as the Court recognized above, an almost universally accepted principle, it also has its limits. One of those limits, which the Court also recognized, is that *expressio unius* should not be applied if it would create absurd results. *See Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 454, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989). This is such a case. Under the defendant's reading of the Control Board's rights, the Control Board has no authority to buy pens and pencils for its offices, no authority to lease office space, and no authority to hire a lawyer to advise it on legal issues. This interpretation is a clear cut case of "absurd results."

Rather than operating as a global provision on the Control Board's acquisition of property Section 103(d) is much more likely a section intended to specifically sanction the Control Board's receipt of property through gift or similar means. Thus, the defendant's interpretation is unreason-

able, and the Control Board properly owns the building.

### D. The "School Facility" Argument

■ The defendant argues that the Control Board cannot sell the property to P & G because the Control Board only has the authority to dispose of real estate which is a "school facility." D.C.Code 47–392.25. The argument deserves little more reply than the single paragraph the defendant committed to it in its brief.

Section 47–392.25, which is titled "Disposition of certain school property," prescribes the method for the Control Board to dispose of school properties. The section does not purport—through its title or content—to be a global explanation of how the Control Board is to dispose of property. The absurdity of the defendant's interpretation is revealed by reading this provision next to Section 103(d) of FRMAA, explained above. Under the Section 103(d), the Control Board is empowered to receive gifts of all sorts of property, both real and personal. But under the defendant's reading of section 47–392.25, the Control Board cannot dispose of any of it; it must amass a great kingdom of land forever and ever.

Little more needs be said. The defendant's interpretation of this section is absurd to the extreme.

### CONCLUSION

The Court is not oblivious to the drama in front of it. The defendant's members clearly wish to retain—and return to—the building that was once their home. But the Court must adhere to the clear law, which, in this case, prevents the defendant from interfering with the sale. Thus, for all of the foregoing reasons, it is hereby

ORDERED that the plaintiffs' motion for summary judgment is GRANTED; further, it is

ORDERED that the defendant's motion for summary judgment is DENIED.

A declaratory judgment consistent with this opinion will issue this date.