**Harry J. WINTER, Plaintiff,**

v.

**D.C. HUD FIELD OFFICE et al., Defendants.**

**No. Civ.A. 00–2706(RMU).**

United States District Court, District of Columbia.

April 2, 2001.

Harry J. Winter, Washington, DC, plaintiff pro se.

Laurie Weinstein, Assistant United States Attorney, Washington, DC, for defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

### DENYING WITHOUT PREJUDICE THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter comes before the court on the defendants' motion for summary judg-ment pursuant to Federal Rule of Civil Procedure 56(c). The plaintiff, Harry J. Winter ("the plaintiff" or "Mr. Winter"), brings this *pro se* suit for breach of con-tract. The plaintiff claims that the United States Department of Housing and Urban Development ("HUD") has a contractual obligation to reimburse him for a training workshop he attended in Las Vegas and for the associated travel costs. Specifical-ly, the plaintiff alleges that HUD pre-approved his grant money for the trip, according to customary procedure. *See* Pl.'s "Opposing" Response to Defs.' State-ment of Material Facts ("Pl.'s Response") ¶ 15; Pl.'s Response Opposing Summ.J. ("Pl.'s Opp'n") ¶ 18. Defendants Mary Dunn and Lee Palman are named in their official capacities as HUD employees.

The defendants move to dismiss this ac-tion under Rule 56(c) on the ground that there is no genuine issue as to HUD's non-authorization of the plaintiff's trip because the plaintiff was aware that written ap-proval was necessary for all grant re-quests. *See* Mot. for Summ.J. at 3. In-deed, the plaintiff concedes that official procedure required him to obtain written approval. *See* Pl.'s Reply at 6.[1] The defen-dants also assert that the agency did not act arbitrarily or capriciously by declaring the trip an ineligible expense.

For the reasons that follow, the court holds that because there is a genuine issue as to HUD's non-approval of the plaintiff's grant request, the defendants' motion for summary judgment is premature. Accord-ingly, the court will deny without prejudice the defendants' motion for summary judg-ment.

---

1. Although the plaintiff titled his opposition to the defendants' motion for summary judg-ment as a reply, the court will refer to it as his opposition. *See Richardson v. United States of America,* 193 F.3d 545, 548 (D.C.Cir.1999) (courts must hold *pro se* filings to a less strin-gent standard than those written by counsel).

## II. BACKGROUND

Harry J. Winter is the President of the Resident Council for Horizon House, a public-housing project that receives grant money from HUD's Tenant Opportunities Program ("TOP"). *See* Pl.'s Response ¶ 4. A Resident Council is a community liaison body designed to improve resident satisfaction and quality of life and to promote participation in self-help initiatives. Council members receive training in community organization and fiscal management, among other things. *See id.* Mr. Winter asserts that the D.C. HUD Field Office gave him and other council members inadequate training in grant-writing skills. *See* Pl.'s Reply at 2–3. Consequently, council members asked the D.C. Housing Authority ("DCHA") to investigate the workshop offerings. *See id.* While Mr. Winter does not discuss the result of this investigation, he and the other members decided to seek out training programs on their own. *See id.* at 4. Mr. Winter states that because HUD and DCHA failed to provide him with information on local workshops, he found a suitable grant-writing workshop in Las Vegas, Nevada. *See id.*

Mr. Winter claims that HUD official Mary Dunn pre-approved his Las Vegas proposal over the telephone on July 29, 1999. *See* Pl.'s Response ¶ 7–8. He admits, however, that she never put her approval in writing. *See* Pl.'s Reply at 6. He also states that he was aware that Ms. Dunn needed to provide written approval of all such "draw down" requests. *See id.* Nevertheless, Mr. Winter maintains that he followed the customary procedure for draw-down requests, which was to receive *verbal* approval from a HUD official. *See* Pl.'s Response ¶ 15; Pl.'s Opp'n ¶ 18. He submitted a grant-request form to HUD only after his trip. *See* Pl.'s Response ¶ 14.

Mr. Winter states that Ms. Dunn called him on or about August 7, 1999 and advised him to cancel the trip, because the Office of Inspector General ("OIG") was auditing Horizon House's records. *See* Pl.'s Response ¶ 10. He asserts, however, that Ms. Dunn never rescinded her approval:

> I told Defendant Dunn that all tickets had been purchased based on her approval. Defendant Dunn left the option to me whether I would still go. I told her that this trip was planned, you approved it, and I still intend on going. The conversation abruptly ended.

*Id.* The defendants counter that before Mr. Winter departed, both the HUD D.C. Field Office and OIG determined that the trip was not eligible for reimbursement and told him as much. *See* Mot. for Summ.J. at 3; Defs.' Reply at 3. The defendants also note that Resident Council training was free and available from the HUD D.C. Field Office. *See* Mot. for Summ.J. at 2. Ms. Dunn states that during the first week of August, she notified Mr. Winter that HUD would not reimburse him for the Las Vegas workshop. *See id.,* Ex. 2 ¶ 5. She maintains that, based on materials provided by Mr. Winter, she could not determine how the trip related to the operations of the TOP. *See id.,* Ex. 2 ¶ 6.

The OIG conducted an auditing review of the Resident Council on August 19, 1999. Joan Hobbs, an Assistant Inspector General for Audit, says she specifically told Mr. Winter on that day that his Las Vegas trip would not be eligible for reimbursement. *See id.,* Ex. 4 ¶ 3. Unless the training was pre-approved in writing or the OIG's audit found a justifiable need for the trip, Mr. Winter would travel at his own personal expense. *See id.* In Mr. Winter's version of the conversation, Hobbs said that he would be reimbursed if

the training were an eligible trip. *See* Pl.'s Response ¶ 13.

On October 13, 2000, the plaintiff filed his complaint in the Small Claims and Conciliation Branch of the Civil Division of the D.C. Superior Court. *See* Notice of Removal, Ex. A. On November 9, 2000, the federal defendants removed the case to this court pursuant to 28 U.S.C. § 1442(a)(1).[2]

## III. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. All evidence and the infer-

ences drawn therefrom must be considered in the light most favorable to the nonmoving party. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial." *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor. *See id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. The Custom Argument

██ Because the plaintiff claims that agency custom guided his decision to take the trip to Las Vegas without prior written approval, he has raised a genuine issue of material fact. Although the plaintiff and defendants agree on the official procedure for receiving TOP grants, if the plaintiff can show he reasonably relied on the predominant agency procedure, he will have

---

**2.** Title 28 section 1442(a)(1) provides for the removal of a civil action commenced in a state court against "The United States or any agency thereof or any officer ... of the United States or of any agency thereof, sued in an official or individual capacity for any act un-

der color of such office...." In this case, the plaintiff is suing the defendants in their official capacity for actions taken under color of federal office, namely, the HUD official's refusal to reimburse the plaintiff for his training trip.

introduced an element that can affect the outcome of the action. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The D.C. Circuit has explained the custom argument as follows:

> [T]he lack of administrative exercise imposes on [an] agency some obligation to protect the parties before it, where possible, from the consequences of their reliance upon its earlier practice ... abrupt changes in discretionary agency practice or interpretation require some degree of notice, if possible, when the change threatens to penalize parties for reasonable reliance on the prior practice.

*Eastern Carolinas Broad. Co. v. Federal Communications Comm'n*, 762 F.2d 95, 101 (D.C.Cir.1985); *see also Briscoe v. Kusper*, 435 F.2d 1046, 1055 (7th Cir.1970) (holding that an agency may be bound by its own established custom and practice as well as by its formal regulations).

In sum, at this point, the court denies as premature the defendants' motion for summary judgment. To survive a future motion for summary judgment, the plaintiff will have to raise genuine issues of material fact about: (1) whether he relied on a grant-money procedure that was sufficiently settled and customary within HUD; and (2) whether his reliance on that procedure was reasonable in light of the notice he received. Because the plaintiff must be given the opportunity to obtain discovery, the court denies as premature the defendants' motion for summary judgment.

## IV. CONCLUSION

For all these reasons, the court denies without prejudice the defendants' motion for summary judgment. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of April, 2001.