**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MEDINA M. DUKES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 08-1683 (RMC)** |
| ) | |
| **ERIC K. SHINSEKI, Secretary,** ) | |
| **U.S. Department of Veterans Affairs,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

In August 2007, Plaintiff Medina Dukes was offered the position of registered nurse in the Women's Health Clinic of the Veterans Affairs Medical Center in Washington, D.C., conditioned upon the successful completion of a pre-placement medical examination. During the resulting examination, Ms. Dukes reported that she had a 70% service-connected disability, 10% of which related to her back. Thereafter, Ms. Dukes refused to provide any information about her condition beyond her back. The VA withdrew its job offer because Ms. Dukes did not complete the medical exam process. She has sued Eric K. Shinseki, Secretary, U.S. Department of Veterans Affairs ("VA"), under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, alleging that the VA discriminated against her based upon a perceived physical and mental disability by failing to hire her. Defendant has filed a motion to dismiss or, in the alternative, for summary judgment, which Ms. Dukes opposes. For the reasons set forth below, the Court will grant Defendant's motion.

**I. FACTS**

In mid-2007, Ms. Dukes responded to Vacancy Announcement No. 07-17 issued by

the VA Medical Center in Washington, D.C., concerning a position as a registered nurse in the Women's Health Clinic. She was interviewed for the position by Gayle Bell, Women Veterans Program Manager and Clinic Coordinator. Following the interview, Ms. Bell offered the job to Ms. Dukes, conditioned upon the successful completion of a pre-placement medical examination. Such an examination is required for all nurses, *see* Def.'s Mot. to Dismiss or for Summ. J. ("Def.'s Mot.") [Dkt. # 21], Ex. 3 (VA Handbook 5019) Pt. 2, ¶ 3, and Ms. Dukes does not claim otherwise.

In accord with VA policy, on August 17, 2007, Ms. Dukes went to the VA's Occupational Health Clinic, where she was examined by Nurse Practitioner George Giannakos. As part of the exam, Ms. Dukes filled out Standard Form 93 ("SF93"), Report of Medical History. *See* Def.'s Mot., Ex. 2. She answered "yes" to the question, "Have you ever received, is there pending, or have you ever applied for pension or compensation for existing disability?" *Id.* at 2. Mr. Giannakos reviewed Ms. Dukes' medical record with her. In response to a question from Mr. Giannakos, Ms. Dukes reported that she had a 70% service-connected disability, 10% of which related to her back.

Upon request, on August 30, 2007, Ms. Dukes faxed a copy of her VA Compensation and Pension ("C&P") Report to Mr. Giannakos.[1] However, the C&P report was "'edited' . . . for privacy reasons," and all information in the report pertaining to Ms. Dukes' 60% disability rating unrelated to her back was redacted. *See id.*, Ex. 3 (faxed copy of redacted C&P report). On September 5, 2007, Mr. Giannakos spoke with Ms. Dukes and told her that Dr. Patrick Joyce, Director, Occupational and Environmental Health, required full disclosure of her C&P report. Def.'s

---

[1] A C&P medical examination is conducted when a veteran files a claim for a VA disability pension or seeks a diagnosis that a current disability is related to an event, injury, or disease incurred while in military service. *See generally* 38 C.F.R. §§ 3.159 & 3.326.

Mot., Giannakos Aff. at 1. Ms. Dukes declined, saying that the edited portions had "no bearing on her back and her employability." *Id.*

Dr. Joyce interviewed Ms. Dukes by telephone on September 8, 2007. At that time, she declined to answer fully his questions regarding her general health, medications, and past medical history. Based on this interview and his review of her chart, Dr. Joyce found Ms. Dukes to be uncooperative with the pre-placement examination. He informed the Chief of Human Resource Management of his decision not to recommend Ms. Dukes for the registered nurse position:

> Applicant declines to provide further medical information relating to medical issues that arose in the course of her pre-placement exam beyond that provided on the SF93. When explained to her again this date, she declared she did not need to answer questions as she was an experienced nurse, knew her duties, and could perform them.
>
> Specifically, applicant indicated use of Wellbutrin; that she was 70% disabled by the VA; that she had chronic back pain, that she was [rated service-connected disabled] for more than just her back but that she would not say for what. She repeatedly objected to the inquiry and questioned the right of an employer to ask medical questions of a pre-placement applicant. She also indicated that if the question was not specifically asked on the SF93 she had no obligation to answer my questions.

Def.'s Mot., Ex. 6 (Memo from Dr. Joyce). By letter dated September 11, 2007, the VA notified Ms. Dukes that she was not selected for the position.

Ms. Dukes remembers her interactions with Nurse Giannakos and Dr. Joyce somewhat differently. She recalls Mr. Giannakos telling her that Dr. Joyce needed the medical records regarding the C&P exam and, when asked what Dr. Joyce was looking for, Mr. Giannakos "appeared evasive stating that they were concerned about the flexion/extension of the back and needed more information." Am. Compl. ¶ 25. Therefore, she submitted information concerning her back. She also recounts a statement by Dr. Joyce that "you just don't get a 70% service connected

disability for a broken toe." *Id.* ¶ 27. Additionally, she alleges that Dr. Joyce made reference to her use of Wellbutrin. When she asked Dr. Joyce "to tell her what exactly he was looking for," "Dr. Joyce did not respond." *Id.* Ms. Dukes states that she "offered to come in to meet with [Dr. Joyce] for evaluation, submit to any examinations and evaluations, and/or bring the [Department] of Veteran Affairs Board Decision Compensation Packet to clarify her disabilities and Dr. Joyce refused informing her that his Nurse Practitioner was capable of performing the exam." *Id.*

From these interactions, Ms. Dukes concluded that the VA erroneously regarded or perceived her as physically or mentally disabled due to her 60% service-connected disability and her use of Wellbutrin. She alleges that she "cooperated with all aspects of the pre-placement medical examination conducted by the VA Medical Center," *id.* ¶ 23, and that Defendant's allegations to the contrary are a pretext for discrimination on the basis of perceived disability. *Id.* ¶ 31.

## II. LEGAL STANDARDS

Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. Where matters outside the pleadings are presented in a motion to dismiss, the court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). In this instance, the Court will consider the Complaint and the exhibits submitted by both parties in support of their briefs for this motion, and thus will treat the motion as one for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

(citations omitted).

## III. ANALYSIS

Ms. Dukes states that "the VA Medical Center intentionally discriminated against [her] on the basis of perceived physical and mental disability." Am. Compl. ¶ 31. This Circuit applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to such claims brought pursuant to the Rehabilitation Act. *See McGill v. Munoz*, 203 F.3d 843 (D.C. Cir. 2000); *Cannon v. Paulson*, 531 F. Supp. 2d 1, 5 n.4 (D.D.C. 2008). Under this framework, a plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant meets this burden, then the plaintiff must have the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons, but were a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804.

The facts in the Complaint are insufficient for the Court to determine whether the VA Medical Center regarded Ms. Dukes as disabled within the meaning of the statute. Testimony or other evidence would be required to prove that Defendant or his agents believed that Ms. Dukes' physical or mental impairments substantially limited her ability to perform major life activities. However,

> where an employee has suffered an adverse employment action and
> an employer has asserted a legitimate, non-discriminatory reason for
> the decision, the district court need not — *and should not* — decide

> whether plaintiff actually made out a prima facie case under *McDonnell Douglas*.

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, the court should move directly to the third prong of the *McDonnell Douglas* framework and consider only whether the plaintiff has provided sufficient evidence for a reasonable jury to find that the defendant's stated reasons are a pretext for discrimination. *Id.* Thus, Defendant's perception of Ms. Dukes is irrelevant at this stage because Defendant has asserted a legitimate, non-discriminatory reason for its decision not to hire Ms. Dukes — namely, that she failed to comply with the condition to which her offer of employment was subject. *See* Am. Compl. ¶ 11 (alleging that Ms. Dukes was offered the position "subject to pre-placement medical examination"). The Court need only consider whether Ms. Dukes has offered enough evidence for a jury to find that Defendant's reason is a pretext for discrimination on the basis of disability.

Ms. Dukes does not challenge Defendant's right to condition her employment upon a medical examination. The Rehabilitation Act, incorporating Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, permits an employer to condition an offer upon the satisfactory completion of a medical examination. *See* 29 U.S.C. § 791(g) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990."); 42 U.S.C. § 12112(d)(3) ("A covered entity may require a medical examination after an offer of employment has been made to a job applicant . . . and may condition an offer of employment on the results of such examination, if – (A) all entering employees are subjected to such an examination regardless of disability."). In fact, Ms. Dukes cites the VA

Handbook for the proposition that "Defendant had the ability to conduct whatever medical examination it wanted." Pl.'s Opp'n [Dkt. #25] at 13. Ms. Dukes bases her claim of discrimination on the allegation that she was never asked about any disabilities other than those related to her back, Def.'s Mot., Ex. 5 ("Dukes Dep.") at 11-12, and that after the medical examination she was not recommended for the position because the examining medical professionals "regarded her as having a major depressive disorder." Am. Compl. ¶¶ 29-30. She maintains that she "cooperated with all aspects of the pre-placement medical examination,"*id.* ¶ 23, and that she was "available, able, willing and ready to submit to *any* medical examinations sought or conducted by the VA Medical Center, Washington, DC." Pl.'s Opp'n, Dukes Decl. ¶ 16 (emphasis added).

The facts, as alleged by Ms. Dukes and in affidavits and testimony submitted by Defendant, show that she was not in fact willing to cooperate with all aspects of the VA-administered pre-placement medical examination. Ms. Dukes states that, when asked by Mr. Giannakos for her medical records, "the Plaintiff demurred on the request for her to provide a medical release for her records from the VA Medical Center in Richmond, VA stating that she preferred to continue her records and care at the VA Medical Center in Richmond, VA, was not provided a job-related or business necessity reasons for the medical release . . . and otherwise would not do so for reasons of privacy." Am. Compl. ¶ 24. When Mr. Giannakos told Ms. Dukes that Dr. Joyce "needed the medical records regarding the C&P exam performed at the VA Medical Center in Richmond, VA," she only agreed to provide (and ultimately provided) him with a portion of the requested documentation. *Id.* ¶¶ 25 & 26. Mr. Giannakos similarly states that he called Ms. Dukes "and advised her that the Director of Occupational Health requested full disclosure," but she still refused to submit the C&P report in its entirety, citing her privacy. Giannakos Aff. at 1.

Mr. Giannakos also stated that Ms. Dukes refused to provide information on the 60% of her VA disability rating not related to her back. *Id.* Similarly, in a memorandum explaining his decision not to recommend Ms. Dukes for the nursing position, Dr. Joyce noted that Ms. Dukes had "indicated . . . that she was 70% disabled by the VA [and] that she had chronic back pain," and that her disability rating was "for more than just her back but that she would not say for what. She repeatedly objected to the inquiry and questioned the right of an employer to ask medical questions of a pre-placement applicant." Def.'s Mot., Ex. 6. Although Ms. Dukes has repeatedly alleged that no one ever asked her about the basis for the 60% of her disability rating that was not attributable to her back problems, *see* Dukes Dep. at 11, she states that Dr. Joyce remarked during a telephone call that "you just don't get 70% service connected disability for a broken toe," Am. Compl. ¶ 27, the implication being that he wished to know what accounted for the 70% disability rating. Ms. Dukes allegedly responded, "No, you don't get 70% for a broken toe and that had healed," *id.*, but did not provide any further information.

The Court must consider "all relevant evidence" to determine whether a reasonable jury could find that Defendant's stated reason for failing to hire Ms. Dukes is a pretext for discrimination. *Brady*, 520 F.3d at 495; *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008). "All relevant evidence" includes, *inter alia*, evidence of the plaintiff's prima facie case and evidence proving the employer's proffered reasons to be false, *see Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998), as well as the evidence presented by the defendant. *See Brady*, 520 F.3d at 495; *Adeyemi*, 525 F.3d at 1227. Ms. Dukes' own admissions show that she did not fully cooperate with Defendant's agents as they attempted to conduct a pre-placement medical exam. Thus, there can be no genuine dispute of fact as to whether she met a necessary precondition for her

employment. On this record, no reasonable jury could find that Ms. Dukes was denied employment because Defendant regarded her as disabled.

## IV. CONCLUSION

Defendant's motion for summary judgment [Dkt. # 21] will be granted and the Complaint will be dismissed. A memorializing Order accompanies this Memorandum Opinion.

Date:   December 2, 2009

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge