Albert ALLISON, Plaintiff,

v.

**HOWARD UNIVERSITY**
et al., Defendants.

No. CIV.A.99–1571(RMU).

United States District Court,
District of Columbia.

April 24, 2002.

Albert W. Allison, Laurel, MD, Plaintiff Pro Se.

Shelia Lowery Ferguson, Howard University, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

### GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court on the defendants' motion for summary judgment. Albert Allison ("the plaintiff" or "Mr. Allison"), brings this *pro se* action for alleged breach of contract, violation of due process, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. The defendants are Howard University ("the law school" or "Howard") and Howard law school professor Sharon Anderson. The plaintiff alleges that the law school expelled him after subjecting him to an improper grading process by wrongfully ratifying the expulsion and

wrongfully denying the plaintiff's petitions for readmission. Additionally, the plaintiff states that the defendants' refusal to grant the plaintiff's readmission petitions constitutes a failure to accommodate a disability. For the reasons that follow, the court grants the defendants' motion for summary judgment.

## II. BACKGROUND

Mr. Allison began his first year at Howard's law school in the Fall of 1993. *See* Compl. ¶ 3.[1] In his first semester, he received three "D" grades and his grade point average ("GPA") was 64.66. *See* Mot. for Summ. J. at 3. After Mr. Allison's first semester, Howard's Assistant Dean for Student Affairs and Records, Denise Purdie, sent him a letter dated March 3, 1994 offering Mr. Allison "assistance with his academic difficulties by inviting him to participate in an Academic Success Project consisting of nine, ninety minute sessions designed to help improve study and exam writing skills." *Id.* (citing Exs. 19, 20 (Allison Dep.) at 37). Mr. Allison "does not recall whether he availed himself of such assistance by taking the offered sessions." *Id.* (citing Ex. 20 (Allison Dep.) at 38). During his first year, Mr. Allison also failed the first semester of Legal Reasoning, Research, and Writing, a year-long required course. *See* Mot. for Summ. J. at 3–4.

In August 1995, during his third year, Mr. Allison enrolled in the Criminal Justice Clinic ("the clinic"), a 12–credit course, to satisfy the law school's "skills course" requirement.[2] *See id.* at 3–4, 6, Ex. 2 ¶ 5, Ex. 29 at 73. Professor Sharon Styles–Anderson taught the clinic throughout the

1995–1996 academic year. *See* Compl. ¶ 4. The law school designed the clinic to offer third-year students pedagogical, theoretical, and practical tools to advance their ability to represent indigent clients in criminal cases through weekly classes and the handling of D.C. Superior Court misdemeanor cases and prisoner's rights hearings under the supervision of D.C. Public Defender Service attorneys. *See* Mot. for Summ. J. at 6, Exs. 30, 32.

On May 7, 1996, Mr. Allison learned of his failing grade of 59 in the clinic and complained to Professor Anderson. *See* Compl. ¶ 2. As a result of Mr. Allison's failing grade, Dean Purdie notified Mr. Allison of his immediate expulsion through a certified letter dated May 22, 1996. *See* Mot. for Summ. J. at 6–7, Ex. 18 at 26, Ex. 16, Ex. 17, Ex. 37 at 122, Ex. 83. Dean Purdie cited as the reason for Mr. Allison's expulsion his failure to satisfy the law school's requirement of a passing grade in a 12–credit course pursuant to Part II(V)(A)(3)(a) of the law school's student handbook. *See* Defs.' Statement of Material Facts ¶ 16. On May 7, 1996, Mr. Allison submitted a formal "Petition for an Expedited Grade Review" to Dean of the Law School Henry Ramsey, Jr. seeking to have his failing grade in the clinic vacated and reassessed. *See* Mot. for Summ. J. at 7; Ex. 40, Ex. 42 at 106.

On May 17, 1996, in response to the petition, the law school convened a Special Grievance Committee ("the committee"), consisting of students and faculty members, to review the "F" grade received by Mr. Allison. *See* Mot. for Summ. J. at 7–8; Ex. 45. On June 20, 1996, following a full

---

1. The plaintiff filed a complaint, a first amended complaint, and a second amended complaint. For the purposes of this Memorandum Opinion, the plaintiff's second amended complaint is the relevant complaint and will be cited to as "Compl."

2. One of the law school's graduation requirements at that time was the completion of a "skills course." *See* Mot. for Summ. J. Ex. 18 at 3. The clinic met the "skills" requirement. *See id.* at 8.

review of Mr. Allison's written materials, the committee unanimously voted to affirm the failing grade given to Mr. Allison by the law school.[3] *See* Mot. for Summ. J. at 9; Ex. 55; Ex. 13; Ex. 15; Ex. 16; Ex.18 at 1–2, 11. On August 9, 1996, Dean Ramsey conducted and completed a review of the committee's hearing record and all oral and written submissions submitted by Mr. Allison, professor Anderson, and the committee. *See* Defs.' Statement of Material Facts ¶ 8. As a result of the review, Dean Ramsey affirmed the "F" grade received by Mr. Allison. *See* Mot. for Summ. J. at 10; Ex. 60; Ex. 61 at 149.

On November 1, 1996, Mr. Allison provided the law school with notice of a temporary disability. *See* Compl. ¶ 17. Specifically, Mr. Allison claims that he suffered "some temporary emotional distress" beginning in the Fall of 1995. *See* Mot. for Summ. J. at 13. Subsequently, Mr. Allison sought readmission to the law school by submitting a series of five "Petitions for Readmission" between November 1996 and October 1998 to the law school's Student Affairs Committee. *See* Compl. ¶¶ 26, 32, 37, 41, 45. Mr. Allison submitted his petitions pursuant to the guidelines set forth in the Law School's Student Affairs Handbook. *See id.* The Student Affairs Committee denied all five of Mr. Allison's petitions. *See id.* ¶¶ 29, 33, 34, 39, 43, 46.

Thereafter, Mr. Allison instituted this lawsuit by filing his initial complaint on June 17, 1999. The defendant filed a motion to dismiss or, in the alternative, for summary judgment, to which the plaintiff filed an opposition. *See* Mem. Op. dated July 26, 2000 at 2. The plaintiff subsequently filed his first amended complaint, which added the count alleging intentional infliction of emotional distress. *See id.*

The defendant filed a motion to strike the plaintiff's first amended complaint. The court issued an order accepting the plaintiff's first amended complaint as filed and, by that acceptance, denying all pending motions as moot. *See id.*

Subsequently, the defendants filed a motion to dismiss the first amended complaint or, in the alternative, for summary judgment. *See id.* The plaintiff countered with a motion for leave to file a second amended complaint to add a count of negligence. *See id.* In the July 26, 2000 Memorandum Opinion, the court granted the plaintiff's motion for leave to file a second amended complaint and denied all other pending motions as moot. *See id.* The court now turns to the defendant's motion for summary judgment.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore,

---

**3.** The Special Grievance Committee noted that in addition to Mr. Allison's failing grade in the clinic, Mr. Allison did not receive the required grade in Legal Writing III, a mandatory requirement for graduation. *See* Mot. for Dismiss at 2 n. 1.

affect the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.[4] *See id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir.1997); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

## B. The D.C.Code's Statute of Limitations Bars the Plaintiff's First Two Breach–of–Contract Claims

To maintain a cause of action on an express or implied contract in the District of Columbia, a plaintiff must bring a lawsuit within three years following the accrual of the claim.[5] *See* D.C.Code § 12–301(7) (1981); *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1198 (D.C.1984). The statute of limitations begins to run "from the date a contract is breached." *Ehrenhaft,* 483 A.2d at 1198 (quoting *Fowler v. A. & A Co.,* 262 A.2d 344, 347 (D.C.1970)).

Turning to the plaintiff's first breach-of-contract claim, the plaintiff states that on May 7, 1996, he requested that Defendant Anderson investigate the plaintiff's failing grade that he received in the clinic. *See* Compl. ¶ 6. The plaintiff alleges that Defendant Anderson exercised an "impropriety of the grading process." *See id.* The plaintiff avers that he relied upon certain binding representations made by the defendant in its "University Bulletin," "Student Reference Manual and Directory of Classes," and "Law School Handbook," when he began law school in August 1993. *See id.* ¶ 3.

---

4. As directed by the D.C. Circuit, the court hereby invokes the requirements of Local Civil Rule 56.1, which states that each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, including references to the relevant parts of the record, and that an opposition to such a motion shall be accompanied by a statement listing all material facts as to which the opposing party contends there is a genuine issue, including references to the relevant parts of the record. *See* LCvR 56.1; *Burke v. Gould,* 286 F.3d 513, 519–20 (D.C.Cir.2002).

5. The parties do not dispute that District of Columbia law applies to the plaintiff's common-law claims.

Assuming *arguendo* that the parties entered into a contract arising from the "binding representations made by the defendant," the court notes that the two most significant time periods for the first breach-of-contract claim are the plaintiff's notice of formal expulsion from the law school and the day in which the plaintiff filed his initial complaint. *See id.* In this case, the law school formally expelled the plaintiff on May 22, 1996 through a certified letter from a law school dean. *See* Defs.' Statement of Material Facts ¶ 16. As previously noted, the plaintiff filed his initial complaint on June 17, 1999. *See* Compl. The parties, however, disagree as to when the statute of limitations begins to run for the first breach-of-contract claim.

■ The Supreme Court addressed the issue of when a statute of limitations commences in employment-discrimination claims in *Delaware State College v. Ricks.* *See* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that the statute of limitations for a lawsuit by a college professor who did not receive tenure began when the college made the tenure decision and communicated that decision to the professor). Applying this reasoning to the facts of the case at bar, the court determines that the statute of limitations began "at the time the [ ] decision was made and communicated to" the plaintiff, which occurred on May 22, 1996. In this case, the "pendency of a grievance, or some other method of collateral review does not toll the running of the limitations periods." *Delaware State College,* 449 U.S. at 261, 101 S.Ct. 498. The defendants' formal decision regarding expulsion "was made and communicated to" the plaintiff on May 22, 1996, more than three years before the plaintiff filed his initial complaint on June 17, 1999. *See Delaware State College,* 449 U.S. at 258, 101 S.Ct. 498; Defs.' Statement of Material Facts ¶ 16. Therefore, the D.C.Code's three-year statute of limitations bars the plain-

tiff's first breach-of-contract claim. *See* D.C.Code § 12–301(7) (1981); *Delaware State College,* 449 U.S. at 258, 101 S.Ct. 498.

■ The plaintiff's second breach-of-contract claim alleges that the defendants made "certain representations, through the [clinic's] syllabus, as to how each clinical participant's grade was to be determined." Compl. ¶ 10. On August 9, 1996, after considering the entire record from the Student Grievance Committee proceedings, Dean Ramsey of the law school "ratified and made final" the plaintiff's failing grade of "F" in the clinic. *See* Compl. ¶ 8; Defs.' Statement of Material Facts ¶ 46. The plaintiff argues that the defendants' failure to give the plaintiff a passing grade in the clinic and Dean Ramsey's subsequent denial of the plaintiff's grade review petition constitutes a breach of contract. *See* Compl. ¶ 8; Mot. for Summ. J. at 33.

Assuming *arguendo* that the parties entered into a contract, the court nevertheless determines that the D.C.Code's three-year statute of limitations bars the plaintiff's second breach-of-contract claim. *See* D.C.Code 12–301(7). Specifically, following the same line of reasoning just enunciated from *Delaware State College,* the court concludes that the aforementioned May 22, 1996 decision that was "made and communicated to" the plaintiff and the plaintiff's initial June 17, 1996 complaint both operate against the plaintiff in this case. *See* 449 U.S. at 258, 101 S.Ct. 498. Accordingly, the court grants the defendants' motion for summary judgment with respect to the plaintiff's first two breach-of-contract claims.

## C. The Additional Breach–of–Contract Claims Cannot Survive Summary Judgment

■ From November 1996 to October 1998, the plaintiff petitioned the law

school's Student Affairs Committee for re-admission five times. *See* Compl. ¶¶ 18, 24, 29, 33, 37. The plaintiff alleges that the defendants' denials of each of the plaintiff's five petitions constitute a breach of contract according to the implied terms of the law school's Student Affairs Handbook. *See* Compl. ¶¶ 21, 26, 31, 35. Additionally, the plaintiff states that in denying his five petitions for readmission, the law school's Student Affairs Committee failed to accommodate his temporary disability, which he had informed the law school about on November 1, 1996. *See id.*

The court now turns to the merits of these claims. First, "[c]ourts are particularly ill-equipped to evaluate academic performance." *Board of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). As the Supreme Court stated in *Horowitz:*

> Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.

*Id.* at 90, 98 S.Ct. 948. In light of the above factors, this court refuses to circumvent the judgment of a professor or an academic grievance board in determining whether a particular student received the proper grade. Indeed, determining a law student's proper grade in a given class has been a mystery for the ages—and this court is far less well-suited to attempt to do so than a law-school professor. *See id.* In this case, however, the plaintiff does not even "establish a mere existence of a scintilla of evidence" in support of his position that there was impropriety in the plaintiff's grading process. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Additionally, the court notes that the law school afford-

ed the plaintiff ample opportunity to correct his earlier academic deficiencies, yet the plaintiff cannot even recall if he availed himself of these opportunities. *See* Defs.' Statement of Material Facts ¶ 5; Ex. 19, Ex. 20 (Allison Dep.) at 38. In sum, the court "decline[s] to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship." *Horowitz*, 435 U.S. at 90, 98 S.Ct. 948. As such, the court grants the defendant's motion for summary judgment as to the additional breach-of-contract claims.

### D. The Defendants Did Not Act Negligently

The plaintiff claims that the defendants' decision to grant and approve the plaintiff's failing grade in the clinic, his subsequent expulsion from law school, the denial of his five petitions for readmission, and the defendants' failure to recognize the plaintiff's temporary disability resulted in "academic, professional, psychological, emotional, and pecuniary injury to the plaintiff." *See* Compl. ¶¶ 23–52. According to the plaintiff, the defendants' conduct before and after his expulsion from law school constitutes grounds for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.

But the plaintiff has failed to provide the defendants with an appropriate standard of care as required by Federal Rule of Civil Procedure 26(a)(2)(B). *See* FED. R. CIV. P. 26(a)(2)(B); Mot. for Summ. J. at 26–27; Defs.' Reply at 19. Under District of Columbia law, the plaintiff in a negligence action bears the burden of proof on three issues: (1) the applicable standard of care; (2) a deviation from that standard by the defendant; and (3) a causal relationship between that deviation and

the plaintiff's injury. *See Hill v. Metro. African Methodist Episcopal Church,* 779 A.2d 906, 908 (D.C.2001). In this case, the court rejects the plaintiff's negligence claims because the plaintiff fails entirely to articulate the applicable standard of care or to state how the defendants might have deviated from that standard. *See id.*

More generally, the plaintiff has provided no evidence that the defendants acted negligently in any manner.[6] In addition, the plaintiff has failed even more glaringly to provide any evidence that the defendants' actions constitute "extreme" or "outrageous" conduct, which is required for a claim of intentional infliction of emotional distress. *See Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 935 (D.C. 1995) (citing *King v. Kidd,* 640 A.2d 656, 668 (D.C.1993)). The court thus grants summary judgment to the defendants with respect to the plaintiff's claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. *See* FED. R. CIV. P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Diamond,* 43 F.3d at 1540.

### E. The Plaintiff Does Not Have a Valid Due Process Claim Because Howard University Is Not a State Actor

The plaintiff contends that the law school is defined as a "public college" under 42 U.S.C. § 2000c, a civil rights statute that addresses desegregation in public schools. *See* Pl.'s Opp'n at 10; Defs.' Reply at 12–13. Thus, the plaintiff avers that the law school's final decision in rendering the plaintiff a failing grade in the clinic constitutes a violation of due process. *See* Compl. ¶ 16. The plaintiff, however, cites not one case in support of his argument that Howard University is a state actor. *See* Pl.'s Opp'n at 9–12. Indeed, as long

ago as 1935, the D.C. Circuit determined that Howard University is a private corporation. *See Maiatico Constr. Co. v. United States,* 79 F.2d 418, 420–21 (D.C.Cir. 1935). Accordingly, Howard University "is not subject to all the constraints put on governmental action by the due process clause." *Williams v. Howard Univ.,* 528 F.2d 658, 660 (D.C.Cir.1976). In this case, "a showing of general involvement in a private educational institution is not enough to convert essentially private activity into governmental activity for purposes of a due process claim, and Howard [University]'s essentially private status must be recognized." *Sanford v. Howard Univ.,* 415 F.Supp. 23, 29 (D.D.C.1976). The court agrees with the defendants that Howard University is not a state actor and thus could not have violated the plaintiff's constitutional right to due process of law. Accordingly, the court grants the defendants' motion for summary judgment with respect to the plaintiff's due-process claim.

### F. The Defendants Did Not Violate the Rehabilitation Act of 1973

The Rehabilitation Act of 1973 provides that "[no] otherwise qualified individual with a disability in the United States, as defined in [this Act], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To establish a prima-facie case of discrimination under the Rehabilitation Act, the plaintiff must show that: (1) he has a disability under the Act; (2) he is otherwise qualified for readmission; (3) he was denied readmission solely by reason of his disability; and (4) Howard

---

**6.** Indeed, the plaintiff did not follow Local Civil Rule 56.1 since he failed to include a statement of material facts as to which there is a genuine issue, including references to the relevant parts of the record. *See* LCvR 56.1; *Burke,* 286 F.3d 513, 519–20.

University received federal financial assistance. *See Guice–Mills v. Derwinski,* 967 F.2d 794, 797 (2d Cir.1992); Mot. for Summ. J. at 14.

■ The plaintiff contends that the defendants' failure to recognize the plaintiff's "temporary disability" and subsequent denial of his five petitions for readmission violates the Rehabilitation Act. *See* Compl. ¶¶ 25–52. Putting aside the fact that the plaintiff would likely have serious difficulty showing that he has a disability as defined by the Act and that he was otherwise qualified for readmission, the court determines that there is no "significantly probative" evidence to indicate that the law school denied the plaintiff's five petitions for readmission solely by reason of his disability. *See* 29 U.S.C. 794(a); *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *Guice–Mills,* 967 F.2d at 797. The law school formally expelled the plaintiff on May 22, 1996 and denied his requests for readmission because of his failure to successfully complete the law school's academic requirements. *See* Defs.' Statement of Material Facts ¶¶ 3–16. In this case, the plaintiff presents not even a "scintilla of evidence" that Howard University denied him readmission because of his alleged disability. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. In sum, there is "no genuine issue as to any material fact" on this point and the defendants are entitled to judgment as a matter of law with respect to the Rehabilitation Act claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Diamond,* 43 F.3d at 1540.

## IV. CONCLUSION

For all these reasons, the court grants the defendants' motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 24 day of April, 2002.

## *ORDER*

### Granting the Defendants' Motion for Summary Judgment

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued,

it is this 24 day of April 2002,

**ORDERED** that the defendants' motion for summary judgment is **GRANTED**.

**SO ORDERED.**