*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CM-80

MATTHEW BROOME, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-11684-17)

(Hon. Lee Satterfield, Trial Judge)

(Argued October 24, 2019                    Decided October 15, 2020)

*Denise D. Green* for appellant.

*Adam Braskich*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time, and *Elizabeth Trosman*, *Anwar Graves*, and *Chrisellen R. Kolb*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and THOMPSON, *Associate Judges*, and STEADMAN, *Senior Judge*.

THOMPSON, *Associate Judge*:    After a bench trial, appellant Matthew Broome was convicted of unlawful entry ("UE") into a restricted area of Howard University Hospital (hereafter sometimes called "the Hospital"), *see* D.C. Code § 22-3302 (2012 Repl. & 2020 Supp.), and possession of a controlled substance

(methamphetamine). He argues on appeal that he is entitled to reversal of his UE conviction because he was entitled to a jury trial and, in the alternative, because the government failed to prove that the Hospital is a "private . . . building," D.C. Code § 22-3302(a)(1). We affirm.

## I.

Appellant's UE conviction was based on what the government alleged was his unauthorized presence in an employee locker room at the Hospital. Harold Bunch, a Howard University ("University") campus police officer whose job entailed security for the campus and the Hospital, testified at trial that at around 5:00 a.m. on July 7, 2017, he and another officer found appellant in a locker room, located in the basement of the Hospital, that was reserved for use by employees who worked in the Hospital's adjacent main kitchen. Bunch testified that the locker room door had an "employees only" sign and that the basement level of the Hospital is restricted to employees and contractors. He further testified that the basement level can be accessed not only through the hospital loading dock area, but also through a route beginning at the main entrance of the Hospital. He explained, however, that "[t]he main entrance . . . was closed" at the time in

question. He acknowledged that the public could access the Hospital at that time of day by entering the Hospital's emergency room.

The officers had to force their way into the locker room, as it was "barricaded." Appellant told the officers that he was "just sleeping" and, upon further questioning, said that he "was waiting on a contractor" for whom he was "doing some . . . air conditioning work." Officer Bunch testified that the officers tried to verify that information, but were unsuccessful; they learned instead that there were no contractors working in the area at the time.

The campus police officers eventually contacted the Metropolitan Police Department ("MPD"), and two MPD officers responded to the scene, arrested appellant for UE, and performed a search incident to arrest. They found on appellant's person "a clear plastic small bag containing a rock like substance and also a small paper that was folded up and that contained a powdery substance[,]" later determined to be methamphetamine.

After the government rested, defense counsel moved for acquittal, arguing that while the amended information charged appellant with a violation of D.C. Code § 22-3302(a) (UE with respect to a "private . . . building"), the Hospital is

open to the public and therefore is a public building, and the government had failed

to prove otherwise.  The trial court denied the motion, reasoning that given "the

context of this case," the Hospital was "not a public institution[.]"[1]  In closing

argument, defense counsel made the same argument he had presented in the motion

for judgment of acquittal ("MJOA").  Appellant also renewed his argument, which

he had presented in a pre-trial motion, and which the court again rejected in finding

appellant guilty, that the government "should have proceeded under [s]ection [b] of

the statute [pertaining to UE with respect to a public building], which would give

the defendant a right to a jury."[2]  Appellant urges the same points on appeal.[3]

---

[1]  The court also rejected the defense argument that the government failed to prove that appellant "entered without lawful authority[,]" as there was no evidence that the locker room doors were locked and there was insufficient evidence "of any signs saying no trespassing or other indications like that."

[2]  *See Frey v. United States*, 137 A.3d 1000, 1001 (D.C. 2016) (explaining that because, under D.C. Code § 16-705(b)(1)(A), "[a] defendant charged with an offense punishable by more than 180 days' imprisonment has a statutory right to a jury trial," a defendant charged under D.C. Code § 22-3302(a), which prescribes imprisonment for no more than 180 days, has no statutory right to a jury trial, but a defendant charged under § 22-3302(b), which prescribes imprisonment of not more than 6 months, has a statutory jury-trial right).

[3]  Thus, the appeal presents us with a question of statutory interpretation (the meaning of the term "public building" as used in § 22-3302(b)), as to which our review is de novo.  *District of Columbia v. Reid*, 104 A.3d 859, 866 (D.C. 2014).  Our task is "'to ascertain and give effect to legislative intent[.]'"  *Rosenberg v. United States*, 297 A.2d 763, 765 (D.C. 1972).

## II.

As described above, the amended information charged appellant with a violation of D.C. Code § 22-3302(a), which provides in pertinent part that:

> (1) Any person who, without lawful authority, shall enter, or attempt to enter, any private dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine . . ., imprisonment for not more than 180 days, or both . . . .

D.C. Code § 22-3302(a)(1). Appellant contends that he should have been charged, if at all, under § 22-3302(b), which provides in pertinent part that:

> Any person who, without lawful authority, shall enter, or attempt to enter, any public building, or other property, or part of such building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof or his or her agent, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof or his or her agent, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine . . ., imprisonment for not more than 6 months, or both.

D.C. Code § 22-3302(b).

Section 22-3302 does not define "public building," and we therefore deem it appropriate to look to the history of the UE statute and its legislative history for guidance. *See In re W.M.*, 851 A.2d 431, 441 (D.C. 2004) ("[W]hen statutory language is not dispositive, . . . we may look to the legislative history . . . to determine the Council's objectives and intent."). Before its amendment in 2009 to establish differing penalties for UE (private building) and UE (public building), the UE statute (earlier codified as D.C. Code § 22-3102) established that unlawful entry into either was a misdemeanor.[4] In enacting the current language of § 22-3302 in 2009, the Council of the District of Columbia (the "Council") explained its rationale for "[p]rovid[ing] disparate penalties for unlawful entry based on whether the unlawful entry was onto public or private property." Committee on Public Safety and the Judiciary, D.C. Council, Report on Bill 18-151 at 44 (June 26,

---

[4] *See, e.g.*, D.C. Code § 22-3102 (1981), which provided that:

> Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, . . . .

2009) ("Committee Report" or the "Report") (stating that unlawful entry onto "[p]rivate property will not be jury demandable and [unlawful entry onto] public property will be jury demandable"):

> The intent of making unlawful entry onto public property [jury-demandable] is to account for a concern that protesters are often charged with this offense and to balance constitutional protections likely exercised by protestors with the government's interest in streamlining the jury system[.]

*Id.* Thus, in referring to "any public building[s]," the Council had in mind locations where protest activity would enjoy First amendment protection[5] (although, as we have explained, the Council did not "tailor the jury-trial right precisely to prosecutions implicating First Amendment concerns" and did not "preserv[e] a jury-trial right only for defendants prosecuted for unlawfully entering a public area of a public building[,]" *Frey*, 137 A.3d at 1003).

---

[5] Even when applying the prior version of the "[a]ny person who . . ." sentence of the statute, this court recognized that the availability of First Amendment protections *vel non* was relevant to (if not dispositive of) whether a building should be treated as public rather than private. *See Byrne v. United States*, 578 A.2d 700, 702 (D.C. 1990) (noting that under this court's UE case law, to protect citizens' First Amendment rights, some "additional specific factor" beyond "'the mere whim of a public official'" must establish a defendants' lack of legal right to remain on public property; rejecting the "flawed" premise that a foreign embassy was public property for purposes of the UE statute, because it was not "public property in the sense in which that term is used in the context of . . . First Amendment rights").

In amending the UE statute in 2009, the Council also added, as § 22-3302(a)(2), a paragraph that states that for purposes of § 22-3302(a), the term "private dwelling" "includes . . . public housing, . . . the development or administration of which is assisted by the Department of Housing and Urban Development, or housing that is owned, operated, or financially assisted by the District of Columbia Housing Authority." 56 D.C. Reg. 7413, 7436 (Sept. 11, 2009) (internal quotation marks omitted). Other than that instruction that certain government-owned or –financed housing should be treated as private, nothing in the 2009 amendments or legislative history indicates that the Council intended any change in how this court had interpreted the reference to "any public . . . building" in the previous UE statute. Thus, the interpretation this court applied in *Whittlesey v. United States*, 221 A.2d 86 (D.C. 1966), remains relevant.

In *Whittlesey*, this court noted that the District's UE statute had been amended in 1952 to cover "any public building[.]" *Id.* at 89. We concluded that it was "plainly shown by the legislative history of the Act that it was the intent of Congress that the Act extend to all buildings and property owned by the District of Columbia or the United States." *Id.* This history is some evidence that when the Council amended the UE statute without defining "public building" or indicating

that it intended the term to have a broader meaning than we recognized in *Whittlesey*, it was satisfied to have that interpretation govern.[6] *Cf. Zemel v. Rusk*, 381 U.S. 1, 11-12 (1965) (reasoning that the fact that Congress "left completely untouched" language from an earlier statute was some evidence that the administrative interpretation of the language was the one Congress intended).

We acknowledge that, as a general matter, "whether a given building is public or private . . . can depend heavily on the context in which the question arises." *Frey*, 137 A.3d at 1002. We are satisfied, however, for the reasons cited above, that for purposes of § 22-3302(b), "public building[s]" generally refers to buildings owned by the District of Columbia or the United States (other than government-owned housing that is declared to be private property under § 22-3302(a)(2)). We need not decide in this case whether, to give effect to the

---

[6] Of note, the Council heard testimony urging it to make UE cases affecting business establishments to be non-jury demandable because UE "creates a significant problem for businesses" and therefore UE cases affecting them "should be resolved quickly and efficiently" by trying them to a judge. Statement of Patricia Riley, Special Counsel to the United States Attorney for the District of Columbia, May 18, 2009, at 8-9. The Council also heard the testimony of United States Attorney Jeffrey Taylor, who urged the Council to leave in place the jury-demandable penalty for UE "into public buildings, such as the Wilson Building[,]" which is the District of Columbia-owned building that houses the Council chambers. Statement of Jeffrey Taylor, United States Attorney for the District of Columbia, March 18, 2009, at 4.

Council's First Amendment objectives, there possibly are buildings beyond those in the District of Columbia that should be treated as public for purposes of the UE statute.[7] It is enough here that we reject the only alternative interpretation of "public building" that appellant urges – any building that is open to the public – because it would significantly impair one of the Council's stated goals behind the 2009 amendment of the UE statute: "streamlining the jury system" while "balanc[ing] constitutional protections likely exercised by protestors" with that objective.[8] Committee Report at 44. That is, if every building that is open to the

---

[7] *Cf. Hudgens v. NLRB*, 424 U.S. 507, 519, 520, 521 (1976) (stating that "the constitutional guarantee of free expression has no part to play" in cases involving speech activities on private property unless the property has been wholly "'dedicated . . . to public use'").

[8] There are similar problems with appellant's effort to utilize definitions of similar terms elsewhere in the D.C. Code. Appellant relies on the definition of "public place" found in the juvenile curfew statute. *See* D.C. Code § 2-1542(9) (defining "[p]ublic place" to mean "any place to which the public . . . has access," including, but not limited to, "common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." That definition, which relates to the offense of a minor's "remain[ing] in any public place . . . during curfew hours[,]" D.C. Code § 2-1543(a)(1), is far more expansive than is warranted for the term "public building" in a UE statute that recognizes a distinction between private buildings and public buildings. Likewise, the expansive definition of "'[p]ublic space'" contained in § 102 of Bill 18-0138 (a provision that would have made it a public nuisance for a criminal street gang to engage in gang activity in any private place or public space in D.C.), which included "a private building that is open to the public," Committee Report Attachments at 64 , is inappropriate here given the Council's intent to treat private and public buildings differently. And in any event, the D.C. Code contains other, much narrower definitions of "public space." *See, e.g.*, D.C. Code § 10-1141.01

(continued…)

public is a "public building," such that a UE prosecution pertaining to it is jury-demandable, the Council's stated goal of streamlining of the jury system would be thwarted.[9]

Case law establishes that Howard University Hospital is not a "building[] . . . owned by the District of Columbia or the United States[,]" *Whittlesey*, 221 A.2d at 89, but is instead a private facility. This court noted in *Burbridge v. Howard Univ.*, 305 A.2d 245 (D.C. 1973), that in 1967, the Hospital, which had been a federal agency, "was transferred by the United States to Howard University, a private corporation, for use as a teaching hospital." *Id.* at 246. In *Ervin v. Howard Univ.*, 562 F. Supp. 2d 58, 61 (D.D.C. 2008), the federal District Court noted that Howard University Hospital "operates a private hospital facility." Howard

_____

(…continued)
(pertaining to rental and utilization of public space, and defining "'[p]ublic space'" to mean "publicly owned property").

[9] We note that our UE opinions have long treated religious or business establishments that are open to the general public as private rather than public buildings. *See, e.g.*, *Darab v. United States*, 623 A.2d 127, 135 (D.C. 1993) ("[T]he Mosque is private property[.]"); *Morgan v. District of Columbia*, 476 A.2d 1128, 1129, 1131 (D.C. 1984) (referring to a hotel driveway as "private property"); *Kelly v. United States*, 348 A.2d 884, 887 (D.C. 1975) (referring to the "private action" of a hotel that had barred the UE defendant); *Drew v. United States*, 292 A.2d 164, 165-66 (D.C. 1972) (rejecting UE defendant's claim that his presence in restaurant he had been asked to leave was an exercise of his "'First Amendment right of assembly with his friends in a public place'"); *McFarland v. United States*, 163 A.2d 627, 628-29 (D.C. 1960) (referring to a tavern as a "private building").

University likewise is a private institution. *See, e.g.*, *McConnell v. Howard Univ.*, 818 F.2d 58, 69 n.13 (D.C. Cir. 1987) ("It is beyond doubt that Howard University is not a public university."); *Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 65, 70 (D.D.C. 2010) (stating that Howard University is a private educational institution and not a public entity); *Remy v. Howard Univ.*, 55 F. Supp. 2d 27, 28, 30, 31 (D.D.C. 1999) (affirming "Howard University's private status," thereby "reasserting years of similar holdings").

Further, case law indicates that Howard University is not a state actor such that any protest activities on its grounds that might implicate the UE statute are entitled to First Amendment protections – the rationale behind the Council's disparate treatment of public buildings. *See Allison v. Howard Univ.*, 209 F. Supp. 2d 55, 62 (D.D.C. 2002) (as a private corporation, the University is "'not subject to all the [constitutional] constraints put on governmental action'" (citing *Williams v. Howard Univ.*, 528 F.2d 658, 660 (D.C. Cir. 1976)); *Remy*, 55 F. Supp. 2d at 28 (holding that the University's action were not sufficiently intertwined with state action to justify the plaintiff's First Amendment claims).[10]

---

[10] *Cf. Slovinec v. American Univ.*, 565 F. Supp. 2d 114, 118 (D.D.C. 2008) (concluding that American University, as a private educational institution, "is not subject to the strictures of the First Amendment" and thus no First Amendment rights were violated when it issued a barring order against plaintiff).

For the foregoing reasons, appellant has not persuaded us that the trial court erred in declining to treat Howard University Hospital as a "public building" or "public . . . property" within the meaning of § 22-3302(b). Accordingly, we conclude that the trial court did not err in declining to afford appellant a jury trial on the charge that he unlawfully entered a section of the Hospital.

## III.

The remaining issue appellant raises is whether the government was required to prove, as an element of the charged UE offense under § 22-3302(a), that Howard University Hospital is a private building. Appellant contends that this was part of the government's burden of proof and that it failed to prove that appellant unlawfully entered a private building.

We reasoned in *Wicks v. United States*, 226 A.3d 743 (D.C. 2020), that "entry on to private property" is "the first element of unlawful entry" under § 22-3302(a)(1). *Id.* at 749. In this case, the government did not provide evidence

specifically about the ownership of the Hospital.[11] Nor did the government ask the trial court to take judicial notice that the Hospital is a private facility or that the University is private. Nevertheless, as recounted above, in denying the MJOA, the trial court stated that given "the context of this case," the Hospital is "not a public institution[.]" We conclude that the trial court was correct in this finding.

To begin with, as already recounted at length in part I, our case law as well as the federal courts of the District have consistently recognized that the Howard University Hospital and the University itself are private entities with private buildings. In light of these holdings, the private nature of the Hospital building is subject to the concept of judicial notice. As we observed in *Poulnot v. District of Columbia*, 608 A.2d 134 (D.C. 1992), judicial notice may be taken of facts that are "well-known by all reasonably intelligent people in the community," or "so easily determinable with certainty from unimpeachable sources, [that] it would not be good sense to require formal proof."[12] *Id.* at 141 (internal quotation marks

---

[11] The prosecutor did elicit from Officer Bunch testimony that as a Howard University police officer, his assignment covers the University campus as well as the Hospital, at least arguably permitting an inference that the Hospital shares the University's status.

[12] "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose

(continued…)

omitted).  We agreed that judicial notice is "'a doing away . . . with the formal necessity of evidence because there is no real necessity for it.'"  *Id.* (ellipsis in original).  Some courts have stated explicitly that "'a court may take judicial notice of a fact even if it constitutes an element of the offense.'"  *See, e.g.*, *People v. Messenger*, 40 N.E.3d 417, 422 (Ill. App. Ct. 2015) (brackets omitted).

In *Gaither v. District of Columbia*, 333 A.2d 57 (D.C. 1975), this court held that it was error for the trial court to require the personal-injury-plaintiff inmate to prove that the Lorton Reformatory, where he was injured while complying with a guard's order, was owned by defendant District of Columbia.  We reasoned that the inmate was not required to prove that fact because "it is clear that a reasonable person with reasonable knowledge of the District of Columbia community would understand that the District own[ed] and operate[d] its own reformatory[,]" in part because of "[m]aterial appear[ing] in the news media almost daily bearing evidence to the fact[.]" *Id.* at 59.

---

(…continued)
accuracy cannot reasonably be questioned." *Christopher v. Aguigui*, 841 A.2d 310, 311 n.2 (D.C. 2003) (quoting FED. R. EVID. 201(b)) (internal quotation marks omitted).

Here, in addition to the authority provided by the numerous court rulings, the court could take into account widespread publicity about the facilities (first, D.C. General Hospital, and then United Medical Center) that have functioned as the only public hospitals in the District of Columbia. *Cf. Robert Siegel, Inc. v. District of Columbia*, 892 A.2d 387, 389, 395 n.11 (D.C. 2006) (noting that this court could "take judicial notice of the thorough and sometimes contentious hearings before the D.C. Council questioning the legitimacy of the" Chief Financial Officer's study of a proposal to acquire land for a baseball stadium, "though [the hearings are] not a part of the record"; citing authority that "'[j]udicial notice may be taken at any time, including on appeal.'").

We note that other courts, too, have taken judicial notice (or have upheld trial courts' actions in taking judicial notice) that a building was public property, even where that status was an element of a charged criminal offense. *See Messenger*, 40 N.E.3d at 422; *People v. Hill*, 949 N.E.2d 1180, 1182, 1183, 1184 (Ill. App. Ct. 2011) (applying statute under which a defendant could be found guilty of aggravated battery if he committed battery on a person who is on public property; concluding that it was not error for the trial court to take judicial notice that the Macon County correctional center is public property because the property's character as public property is not subject to legitimate dispute); *In re*

*Bacon*, 49 Cal. Rptr. 322, 329, 333-34 (Cal. Dist. Ct. App. 1966) (taking judicial notice of the fact of common knowledge that Sproul Hall is one of the complex of buildings located on the campus of the University of California at Berkeley, a public trust, and therefore rejecting defense that Sproul Hall is not "'a public building of a public agency'" for purposes of criminal trespass statute).[13]

In light of the totality of the foregoing, we are satisfied that the trial court's finding that the Hospital was a private building should be sustained. We do not overlook our statement that it is "objectionable" for a court to take judicial notice *sub silentio* without giving parties notice and an opportunity to be heard. *Bradley v. District of Columbia*, 107 A.3d 586, 600-01 (D.C. 2015) (referring to giving parties an opportunity to be heard on the court's taking judicial notice of CourtView records). Assuming without deciding that in this case the colloquy between the court and defense counsel did not give counsel notice that the court was taking judicial notice, we conclude that any error was not reversible error. For one thing, the court "disclosed the fact[] that w[as] being noticed[.]" *Harrison v. United States*, 76 A.3d 826, 833 (D.C. 2013). For another, even now, appellant has

---

[13] *But see, e.g.*, *State v. Kareski*, 998 N.E.2d 410, 415-16 (Ohio 2013) (holding that it was error for a trial court to "fill[] a gap left by the state in proving its case by taking judicial notice of an essential element" of the charged offense, and reversing conviction that relied on judicial notice that the contents of Bud Light met the statutory definition of beer).

not come forward with any evidence that the Hospital is a public building that might have been introduced to counter the trial court's statement that it was a private institution at the time of the July 2017 incident. Appellant continues to rely solely on the argument that the Hospital is open to the public, which we have concluded does not make it public for purposes of the UE statute.

## IV.

Wherefore, the judgment of the trial court is

*Affirmed.*